1                    IN THE UNITED STATES DISTRICT COURT
                    FOR THE DISTRICT OF SOUTH CAROLINA
2                          CHARLESTON DIVISION

3    ERNEST BOWMAN, Personal Representative    :
     of the ESTATE OF EASEL HAMILTON;          :
4    JENNIFER WILLIAMS; and HENRY L. COHEN     :
                                               :
5              vs.                             :
                                               :
6    THE STANDARD FIRE INSURANCE COMPANY,      :
     THE AETNA CASUALTY AND SURETY COMPANY     :
7    and TRAVELERS CASUALTY AND SURETY COMPANY :   2:06 cv 3307

8

9

10         Motion Hearing held on Tuesday December 1, 2009,

11    commencing at 2:40 p.m., before the Hon. C. Weston Houck,

12    in Courtroom IV, United States Courthouse, 85 Broad St.,

13    Charleston, South Carolina, 29401.

14

15
     APPEARANCES:
16
                      ALVIN HAMMER, ESQ. and DONALD HOWE, ESQ.,
17                    P.O. Box 598, Charleston, SC, appeared for
                      plaintiffs.
18
                      MORRIS D. COOKE, JR., ESQ., P.O. Drawer H,
19                    Charleston, SC, appeared for defendants.

20

21

22         REPORTED DEBRA LEE POTOCKI, RMR, RDR, CRR
             Official Reporter for the U.S. District Court
23                       Charleston Division
                         P.O. Box 835
24                    Charleston, SC  29402
                         843/723-2208
25

1          THE COURT:  Okay.  This is Civil Action 06-3307,

2     Ernest Bowman, personal representative of the Estate of Easel

3     Hamilton, Jennifer Williams and Henry L. Cohen, plaintiffs,

4     against the Standard Fire Insurance Company, Aetna Casualty

5     and Surety Company and Travelers Casualty and Surety Company,

6     defendants.

7        We have heard the defendant's motion for summary judgment,

8     and granted that motion, and this is a motion made by the

9     plaintiffs for us to amend that order deciding the motion and

10    denying that motion, and so that they can have a jury trial.

11       So, Mr. Hammer?

12          MR. HAMMER:  Thank you very much, Your Honor.

13       (Discussion held off the record.)

14          MR. HAMMER:  Our argument is pretty straightforward.

15    There's basically one sentence in this insurance policy that's

16    at issue as far as this motion is concerned.  And it says,

17    "This insurance applies to bodily injury and property damage

18    which occurs during the policy period."

19       Now, Mr. Cooke at the last hearing acknowledged that

20    there's no other temporal limitation in the policy other than

21    that phrase, that limits it to bodily injury that occurs

22    during the policy period.

23       So we're really focused on that sentence and whether or

24    not that does require that the bodily injury occur during the

25    policy period or not.

1      Your Honor said at the last hearing, and I've taken it,

2  I've quoted this, "We have to apply the English language to

3  this equation, and give the language in this policy the plain,

4  ordinary, usual meaning."  And then you went on to say,

5  "That's what the law is and that's what it's always been."

6  And I think that's still what it is.

7      Mr. Cooke reinforces that and says that it is for the

8  Court to enforce contracts of insurance, giving the language

9  its plain and ordinary and popular meaning.  So I think we're

10  all on the same wavelength at this point.

11      An important factor of the formulation of language is that

12  the meaning of the words used depend on the rules of grammar.

13  In other words, the Court must consider the English language

14  used, apply rules of English grammar to the words written in

15  the contract, and enforce the contract as written.  And I

16  think we all agree on that.

17      There are some other principles that I would like to go

18  over with Your Honor, because I think they're important,

19  they're somewhat on the same line.  And it says agreements in

20  general are interpreted according to the terms the parties

21  have used.  And the terms are to be taken, understood in the

22  plain, ordinary, popular meaning.  And it says when a

23  contract's language is unambiguous, the language alone

24  determines the force and effect.  And I think earlier in the

25  hearing before you found that this contract was unambiguous,

 1   was not ambiguous.

 2        The third thing, principle that I wanted to call to the

 3   Court's attention is that the words of a carefully prepared

 4   contract are presumed to have been employed deliberately and

 5   intentionally.  So if you have some words in there, you've got

 6   to assume that the parties deliberately and intentionally used

 7   the words that they did.

 8        And the last thing is that the Court must enforce the

 9   unambiguous contract according to its terms, regardless of its

10   wisdom or folly, and regardless of the apparent

11   unreasonableness of the parties or the parties' failure to

12   guard their rights carefully.

13        When we look at those principles and we apply that to what

14   we have in this case, we look at what Professor Morrison's

15   affidavit on file says.  And she says -- about this sentence,

16   she says the sentence reads as follows:  "This insurance

17   applies only to bodily injury and property damage which occurs

18   during the policy period."  Then she goes on to say, "The

19   rule, the grammar rule, an ironclad rule of English grammar is

20   that subjects and verbs must agree in number.  A singular

21   subject takes a singular verb, a plural subject takes a plural

22   verb.  Occurs is a singular verb, and must, therefore, refer

23   to a singular subject.  Because the clause immediately follows

24   property damage, which is a singular subject, it grammatically

25   refers to property damage and not to bodily injury."

1    Now, the Court pointed out, or felt that we had pointed

2 out, on page 60 of the original transcript, that there was a

3 grammatical mistake in the language contained in the insuring

4 agreement.  When the word 'and' is used rather than 'or,' and

5 the word 'occurs' is used rather than 'occur.'  And the Court

6 said, "I would say that is a grammatical error."

7    Judge, it would only be a grammatical error if you're

8 trying to interpret the sentence as the defendants want to

9 interpret the sentence.  If you interpret the sentence the way

10 Professor Morrison says it should be interpreted as written,

11 then it's grammatically correct to interpret it that way,

12 under her -- using her rules of grammar.  There's no

13 grammatical error if you're interpreting the sentence to say

14 what Professor Morrison and the plaintiffs say.

15    I think that the Court, by saying that there was a

16 grammatical error, understands that the subject and verb do

17 not agree in this sentence, that one is plural, one is

18 singular, and you have to have singular singular.  So it only

19 applies to the bodily -- to the property damage and not the

20 bodily injury.

21    We submit that using proper English grammar and following

22 subject-verb agreement rules, the proper way to interpret this

23 sentence is not limited to what the defendant contends.

24    And, Your Honor, I passed this to Mr. Cooke and I'd like

25 to pass this up to you as well, because we think this

1    reinforces what Professor Morrison says.  This is

2    Mr. Blackshaw, who was the underwriter in the case.  And we

3    ask him -- I have attached Exhibit 2 right behind here.  But I

4    asked him what Exhibit 2 was.  And he says Exhibit 2 is the

5    insuring agreement for Coverage A, which is bodily injury and

6    property damage.  And what he did in that agreement, he wrote

7    out the agreement in longhand for me, putting in the actual

8    definitions.  The policy says that when these words in quote

9    appear, that they are to -- they refer to the definition.  And

10   when you read what this sentence says -- and this is the same

11   sentence supplying the definition -- we think reinforces what

12   Professor Morrison's view is.  And it says, "This insurance

13   applies only to bodily injury, shock, fright, mental anguish,

14   humiliation, sickness or disease sustained by a person,

15   including death resulting from any of these at any time, and

16   property damage which occurs during the policy period."

17       Your Honor, we submit when you read that language, it can

18   have the meaning that Professor Morrison says it has, and we

19   think this reinforces that meaning.  And it's only when you

20   read the language and say there's a mistake in the grammar,

21   that it comes out in a different way.  If you read the

22   sentence with appropriate grammar, then the sentence has a

23   meaning which Professor Morrison says.

24       And we submit to Your Honor that if there's one way to

25   read the sentence, with the grammar written correctly, and

1    there's one way to read the sentence with incorrect grammar,

2    the Court has to take the sentence with correct grammar.

3         When you have contracts, the whole idea is to have

4    stability and predictability and certainty and reliability.

5    But if the Court can come in later and say, I think there's a

6    grammatical error here, and the meaning of this really should

7    be this, you don't have stability and you don't have

8    predictability, and you don't have certainty and you don't

9    have reliability.  The language that's used in this contract

10   does not exclude a reading in accordance with Professor

11   Morrison's reading, nor that of the plaintiff.  And because of

12   that, we submit that summary judgment is not appropriate.

13        I'd be glad to answer any questions Your Honor has.

14             THE COURT:  I don't think I have any.  I understand

15   your argument very well, and it's an ingenious argument.  It's

16   one that I've never heard before, I don't know that anybody's

17   ever made the argument before.  But I don't have any

18   questions; I understand it very well.

19        Let me hear from Mr. Cooke.

20        (Brief interruption in proceedings.)

21             THE COURT:  All right, sir, go ahead.

22             MR. COOKE:  Thank you, Your Honor.  First of all,

23   this is a motion essentially to reconsider an order granting

24   summary judgment.  I'd like to start by pointing out that the

25   standard is very high at this stage.  A motion for

1    reconsideration after the entry of summary judgment is an

2    extraordinary remedy which should rarely be used.  Recently

3    the Court, Fourth Circuit Court of Appeals in TFWS, Inc.

4    versus Franchot, in talking about reconsidering a judgment

5    based on a clear error in law, which is the standard that the

6    plaintiffs espouse here, requires that more than just maybe or

7    probably was wrong; it must, quote, "Strike us as wrong with

8    the force of a five-week-old unrefrigerated dead fish."  In

9    other words, it's not a vehicle just to ask the Court to

10   change its mind.  Motion for reconsideration cannot be used to

11   make arguments that could have been made before the judgment

12   was entered.  It's not -- the purpose is not to rehash the

13   same arguments and facts previously presented.  And Your Honor

14   has held as much in several decisions.

15        The plaintiffs acknowledge, and I'm quoting now on page

16   two of their brief, they acknowledge that they have presented

17   the same contention to the Court.  However, based upon the

18   Court's ruling, plaintiffs believe the Court misapprehended

19   the basis supporting plaintiffs' contention.  So they're not

20   offering any new argument, Your Honor, they're asking the

21   Court simply to change its mind, which is not a proper use of

22   Rule 59.

23        In fact, when you dig a little deeper you realize that the

24   Court did apply all of the correct legal principles that the

25   plaintiffs now espouse.  And if you look at pages 58 through

1    60 of the transcript of Your Honor's ruling, the first thing

2    Your Honor said was that the evidence must be construed in the

3    light most favorable to the plaintiff.  Page 59, that

4    particular words or phrases are not determined by considering

5    them by themselves, you must read the policy as a whole and

6    consider the context.  Words must be given their plain, usual

7    and everyday meaning.  And you said it is not for the Court --

8    it's not to the Court's job to rewrite the policy, but to

9    determine the intent of the parties, determined by reading the

10   whole contract.

11       Now, on page 60 you said that you must give the language

12   of the contract a reasonable meaning, a fair meaning, a

13   consistent meaning, as opposed to an absurd or unreasonable

14   meaning.

15       And, Your Honor, we've never asked this Court to reform

16   the words of the policy to make it fair, we've only asked that

17   the Court give the language its fair and reasonable meaning.

18       One thing the plaintiffs have failed to do is to ever cite

19   in any of their briefs, including this one, the appropriate

20   standard for determining whether there's an ambiguity in the

21   insurance policy, or any contract.  And the standard, as

22   announced in Hansen versus USAA, and a number of other cases,

23   is that in order for there to be an ambiguity, as the Court --

24   as the law recognizes, that the policy must be reasonably

25   susceptible to two different interpretations that are both

1     fair and reasonable.  And that's what the Court focused on.

2     We don't concede -- we call the sentence three, the sentence

3     that we're referring to, that sentence three of the insuring

4     agreement, we don't concede that it's grammatically incorrect.

5     But the Court understood the plaintiffs' argument about the

6     agreement in numbers, and it considered the possibility that

7     there is a grammatical error.  And if I could just quote less

8     than a page of the Court's ruling, page 60, it says, "Based on

9     those rules of construction, I have reviewed these contracts,

10    I've looked at the contracts in their entirety, I've tried to

11    give the language of the contracts a reasonable meaning, a

12    fair meaning, a consistent meaning, as opposed to an absurd,

13    unreasonable meaning.  When I do that, I'm convinced that the

14    contracts are not ambiguous.  I think the meaning, the intent

15    of the parties is clear from a review of the contracts.  All

16    four contracts provide coverage for bodily injury which occurs

17    during the policy period.  Counsel has pointed out a

18    grammatical mistake, so he asserts, in the language contained

19    in the insuring agreement when the word 'and' is used rather

20    than 'or,' and the word 'occurs' is used rather than 'occur.'

21    If I were grading someone's paper in an English class, it may

22    be that I would agree, and I would say that that is

23    grammatical error, but I don't think that's what we're doing

24    here.  I think we're trying to give this language its

25    reasonable meaning.  And when we do, I think it's clear that

1    only bodily injury that occurs during the policy period is

2    covered."

3        Your Honor, I think that's probably the distinction

4    between what the courts repeatedly say.  Nowhere do the courts

5    say that you apply a hypertechnical grammatical construction

6    to interpreting any contract.  What it says is that you give

7    it its plain, ordinary and popular read.  And based upon that

8    standard, there's simply no way that a plain ordinary person

9    could read this insuring agreement and this contract and

10   determine that its intent was to cover bodily injury whenever

11   it might occur.

12       You know, we talked about grammar and had an English

13   professor cited and, you know, maybe this language would only

14   get a B.  But if I said, Your Honor, take a look at this and

15   grade it as though the intent were to say that it covers

16   bodily injury at any time, it would get an F minus minus,

17   because there's no way that a human being could read that

18   sentence as saying that.

19       Now I would like to point out a couple of reasons why.

20   First of all, if you look at the actual agreement itself, why

21   would it even use the word bodily injury in sentence number

22   three, because the very first sentence of the insuring

23   agreement says, "We will pay those sums that the insured

24   becomes legally obligated to pay as damages because of bodily

25   injury or property damage to which this insurance applies."

1    Okay?  So if you take the plaintiffs' construction, enough

2    said.  There's no reason to mention bodily injury again in

3    sentence number three.

4        Second point is, why does it say applies only to bodily

5    injury and property damage which occurs during the policy

6    period.  And then why wouldn't it say 'to' again before

7    property?  What I'm saying is that in order -- Mr. Hammer says

8    that this sentence would be grammatically correct if you were

9    to interpret it their way.  But it would not be grammatically

10   correct to interpret it their way.  The sentence would have to

11   read like this.  This insurance applies to bodily injury and

12   only to property damage which occurs during the policy period.

13   You'd have to move the word only, and you'd have to add

14   another adverb, to, right in front of bodily injury, or

15   property damage, for it to be even grammatically close to

16   correct by their interpretation.

17       And then finally I'd say what would be the purpose of

18   paragraph 1(b), "Damages because of bodily injury include

19   damages claimed by any person or organization for care, loss

20   of services or death resulting at any time from the bodily

21   injury."  If bodily injury could occur any time, why would you

22   bother putting in a whole paragraph that explains that we

23   still cover death and a loss of services and so forth and

24   other damages that arise at any time from bodily injury?  If

25   bodily injury is wide open, that would be surplusage.  And one

1    of the fundamental rules of contract construction is that

2    there is no surplusage; we have to, if we can, in order to

3    avoid an absurd result, give meaning to every question.

4        The plaintiffs contend in their brief that the language

5    would be clear if they used the word 'or' rather than 'and,'

6    language would be clear if it used singular rather than

7    plural.  Yet, there are very good reasons why it could have

8    been written exactly as it was and still be grammatically

9    correct.  One is, we pointed out before, the title of this

10   coverage is right up there, says Coverage A, bodily injury and

11   property damage liability.  In other words, we -- remember, we

12   argued about spaghetti and meatballs, and Your Honor was

13   critical of that analogy, because bodily injury is often

14   treated differently than property damage in the coverage.  But

15   yet, this is called bodily injury and property damage

16   liability coverage.  And so it would be logical to link those

17   two together.

18            THE COURT:  Is spaghetti and meatballs 'is' or 'are?'

19            MR. COOKE:  I actually think you could do either one.

20   But Garner says in his book it's okay to call that singular,

21   because they're considered one thought process.  And -- but

22   that's just one reason it could have been done that way.

23            THE COURT:  Do you place any significance in the use

24   of separate quotation marks for bodily injury and property

25   damage?

1           MR. COOKE:  I think what they're trying to get across

2     is that it could be either/or; that you could have bodily

3     injury without property damage, you could have property damage

4     without bodily injury, or you could have them both together.

5     And that, you know, one might be critical if they'd used the

6     plural form there, and said we cover -- applies only to bodily

7     injury and property damage which occur during the policy

8     period.  Well, what if only one occurred; what if you had

9     bodily injury and not property damage; would some smart aleck

10    say, well, that exclusion doesn't apply, because both didn't

11    occur, and you used the plural form.

12        I think the use of the singular form here makes it

13    perfectly clear that it's an either/or.  That either bodily

14    injury or property damage are covered, or both, but they both

15    have to have occurred during the policy period.  Because

16    otherwise there's no reason to put property -- bodily injury

17    there at all, there's no reason to put only in front of bodily

18    injury.

19        Your Honor, a point was made in the briefs about the ISO

20    forms.  And I would call the Court's attention to Exhibit 9 of

21    our brief, which is very telling on that point.  This is an

22    ISO circular, and you see on page two of that, it's

23    copyrighted 1984, and they talk about what was then the

24    current form and what was going to be the new form, and they

25    call that proposed, and they call it a side-by-side

1    comparison.  And they're explaining to the insurance industry

2    what the changes are that we're about to make in this standard

3    form.  Well, the language that they used is exactly the

4    language that we have in these policies.  It says this

5    insurance applies only to bodily injury and property damage

6    which occurs during the policy period.  Our identical

7    language.  You go to the next page, and here is the ISO's

8    explanation of what that language means.  And it says, "As in

9    the current contract, the insurance is applicable only to

10    bodily injury or property damage which occurs during the

11    policy period."  In the current contract that language is in

12    the bodily injury and property damage definition, and now it

13    was moved to the insuring agreement.  But you see what they

14    did, the actual policy language that they used is exactly like

15    what we have.  But when they explain it, they used 'or'

16    instead of 'and.'  In other words, they used it

17    interchangeably, to mean the exact same thing.

18        So, Your Honor, that's just a long way of saying that we

19    don't even accept the premise that there's a grammatical error

20    in that sentence, but I think the Court, in its original

21    judgment, already took into account that it may be

22    grammatically inelegant, it may be grammatically incorrect,

23    but that the Court's task is to evaluate the entire contract

24    together in the context.  And if you were to accept that

25    interpretation, it simply is not a fair and reasonable

1    construction, because it has misplaced modifiers, it has

2    unnecessary language, and it's inconsistent with all the other

3    provisions of the policy and how the policy's set up.

4        Your Honor found correctly last time that the clear intent

5    of the policy, when you use the definition section and you

6    import that into the insuring clause, the clear intent of all

7    that was to say that if you had property damage or a bodily

8    injury that occurred during the policy period, then you still

9    would have coverage for damages that occurred outside the

10   policy period.  Like if you were injured within a policy

11   period and then you died later, you're still covered, even the

12   death is covered.  And that's the whole purpose of that

13   somewhat convoluted language, is to make that clear.

14       Your Honor, I still stand by what we said at the last

15   hearing, and that is, the plaintiffs have not cited and we

16   have not found a single reported case, or unreported anywhere,

17   that has found a similar or identical insuring agreement on an

18   occurrence type policy to be ambiguous with regard to when the

19   loss has to have occurred.

20       Most of the cases that we see reported don't give you the

21   exact language, so we don't know exactly whether they looked

22   at an 'and' or an 'or,' but we did find two that we cited to

23   Your Honor, Mirza versus Outdoor Leisure, Louisiana Court of

24   Appeals from 1993, and then the unpublished case of Travelers

25   Insurance versus Children's Friend and Services from Rhode

1    Island in 2005.  Both of those considered the identical

2    sentence, the identical language to what we have here; neither

3    found any ambiguity in that.

4        Your Honor, I'd just ask the Court to focus on what it did

5    the first time, which is the test of ambiguity is can this

6    policy, can this language, taken as a whole in proper context,

7    reasonably and fairly be read more than one way, and it simply

8    can't be.

9        If you sit down and you think, if I were trying to express

10   the idea that this insurance applies to bodily injury whenever

11   it might occur, how could I, in my wildest imagination, in my

12   weakest moment, in my wildest delusions, have written, "This

13   insurance applies only to bodily injury and property damage

14   which occurs during the policy period."

15       I do have to make one comment about Blackshaw.  I'm not

16   sure the exact point that was made by handing this up, but

17   Mr. Blackshaw was just writing what Mr. Hammer told him to

18   write on that sheet of paper.  He essentially copied the

19   insuring agreement, but then copied the whole definition of

20   bodily injury, instead of the word bodily injury.  So I'm not

21   sure of the point, but I just want to make sure the Court

22   understands that this was not an expression of any opinion by

23   Mr. Blackshaw about what the policy said, he was simply

24   writing what Mr. Hammer told him to write.

25       Based on the extremely high standard that the courts have

1    enunciated for reconsideration of summary judgment, based upon

2    the Court's correct application of every single rule of

3    construction in granting the summary judgment, we ask --

4    respectfully ask that the Court allow its ruling to stand; the

5    rule, once again, that hypertechnical grammatical criticism

6    cannot change the clear meaning of this policy, and that it

7    would deny the motion.

8        Thank you.

9            THE COURT:  Mr. Hammer?

10           MR. HAMMER:  Thank you, Your Honor.

11           THE COURT:  I asked Mr. Cooke, I didn't ask you, but

12    in the policy where they -- this insurance applies only to

13    bodily injury and property damage, and separate quotation

14    marks are around bodily injury and property damage, do you

15    place any significance on that, as opposed to one set of

16    quotation marks?

17           MR. HAMMER:  Your Honor, I think that each one of

18    those are a different -- in the policy they're defined

19    differently, they're treated differently, and some of the --

20    in the insuring clause itself, in some of the places it

21    doesn't say bodily injury and property damage, it says bodily

22    injury or property damage.

23           THE COURT:  What if they didn't say bodily injury and

24    they didn't say property damage, they just said Coverage A;

25    would you have our argument then?

1          MR. HAMMER:  Except for -- Here's what it says.

2     You've got to --

3          THE COURT:  No, no, no, let's go to my question.

4     What if it didn't say bodily injury and property damage, but

5     it just said Coverage A.

6          MR. HAMMER:  I'd have a harder time.  Because when

7     you read this policy, it tells you how to read it.  It says

8     other words and phrases that appear in quotation marks have

9     special meaning, and then you refer to the definition.  So

10    when they put them in quotation marks, then you go to the

11    definition.  That's why I'm saying what Mr. Blackshaw wrote

12    was in accordance with the way it tells you to read the

13    policy.  So when you do that, you have this definition of

14    bodily injury which says shock, fright or any of these

15    resulting from any of these at any time, and property damage

16    which occurs during the policy period.

17         Now, Your Honor, there are two things that I would point

18    out.  In the year 1989 and '90 and '91, the policy is exactly

19    what we're talking about.  But the next year, '91, '92, and

20    this is in Mr. Cooke's brief, the company did make changes in

21    the policy.  And they changed the policy to say this insurance

22    applies to bodily injury and property damage only if the

23    bodily injury or property damage occurs during the policy

24    period.  Mr. Sennott testified, it's in the record, that the

25    only reason they made changes, either to change the coverage

1    or to clarify.  So we have that change.

2        The other change that we have is the ISO policy that was

3    read as proposed, was not what was actually the final version

4    of that policy.  The final version, and it's in Mr. Cooke's

5    affidavit, says this insurance applies only to bodily injury

6    or property damage, not and property damage.  So what the

7    proposed -- what they were proposing, somebody, I would

8    submit, there's an inference that somebody saw that that was

9    not grammatically correct and corrected it.  The Standard Fire

10   Company saw that.  They have a department, they take part of

11   ISO and they take part of whatever they want, they have their

12   own department, they write their own policies.  And the

13   testimony is that they chose this language.  That goes along

14   with the South Carolina law which says when you have a

15   comprehensive policy, you have to assume that the parties

16   deliberately and intentionally chose the language that they

17   used.

18       Now, Mr. Cooke says, well, this really means either/or.

19   But if it meant either/or, it would have been very simple for

20   them to write it either/or.  They're the author of this

21   dilemma.  They could have said this policy -- this insurance

22   only applies to either bodily or property damage which occurs

23   during the policy period.  They could have said it a lot of

24   different ways.  But when they deliberately chose the language

25   they did, and you've got to -- you know, they are the author

1   of this policy, they wrote the policy.  And so if there's

2   anything to be -- if there's any question about it, it has to

3   be read most favorably against them.  So we submit that there

4   is an issue of fact in this case.

5        The other thing is, insurance policies all the time have

6   redundant things, they say one thing here and one thing here,

7   one thing here, and it all comes out the same.  So the fact

8   that they said it more than once is, and we submit, of no

9   moment.

10       The other matter that I would call to your attention is

11  you've got to remember, this policy was written for a

12  construction company building a highway, I-26, in 19 -- it was

13  '89 and '90, somewhere around there, and it was finished in

14  1990.  And they knew that they would be subject to liability

15  for their mistakes on this highway until the Statute of Repose

16  ended, which I think was -- at this time I'm not sure whether

17  it was 13 years or 15 years at that time, I think it's changed

18  somewhat in the interim.  But they understood that they had

19  this liability out there for their mistakes.  So it's

20  certainly reasonable for somebody to want an insurance policy

21  that would cover them for later on.  Because when you're

22  building a highway, it may look fine, and two years later when

23  you have the puddles start building up, or three years later,

24  and it's not in the same policy period, and you're out of

25  business or whatever it is, you want to be protected.

1    So I think that, you know, it's sort of a red herring to

2    say that what we propose is totally unreasonable.  Now, the

3    reason I don't think that is important, is because the

4    contract has to be enforced regardless of the wisdom or the

5    reasonableness of the terms that are in it, or regardless of

6    the rights that it protects, if it's unambiguous.  And if it's

7    written a certain way, you don't look at whether it's

8    reasonable or not.  You can have all kind of terms that you

9    say, well, it's unreasonable to get $5000 worth of property

10    damage, when you know most cars are going to be 25,000.  But

11    people do it.  You don't change that just because it's not a

12    reasonable term.  If it's written, if it's clear, if it's

13    unambiguous, the reasonableness is not something for the Court

14    to consider.

15    And, Your Honor, I think that when I read -- when we read

16    what Mr. Cooke read to you -- and I'll read it again to you.

17    If you were grading this paper you may agree and you would say

18    that there is a grammatical error.  But this is the critical

19    part that I think we have our problems with the Court on.

20    "But I don't think that's what we're doing here.  I think

21    we're trying to give this language its reasonable meaning."

22    Now, I don't think the law says you give the language its

23    reasonable meaning; I think the law says you enforce the

24    contract as it's written, if it's unambiguous.  Whether it's

25    reasonable, regardless of the reasonableness, regardless of

1    the wisdom or the folly of the contract.

2         And so we submit to Your Honor that the dilemma we're at

3    is because of the defendants' own doing.  They brought this

4    dilemma on themselves.  And we submit to you that just hearing

5    all of this, there's certainly questions that need to be

6    answered before we can say there's no way that this policy can

7    be read the way this English professor reads it, applying

8    normal grammar.

9         Thank you.

10             THE COURT:  Anything, Mr. Cooke?

11             MR. COOKE:  Just three points briefly in reply.

12   First of all, if I heard Mr. Hammer correctly, he said that

13   the ISO circular that I quoted to Your Honor was not the final

14   version and that there's another one that was.  I don't

15   believe there's anything in the record that shows there's

16   another final version.  The plaintiffs submitted one that has

17   a 1982 and '84 copyright date.  This circular with the

18   proposal for the new one has a copyright date of 1984.  I

19   don't believe there's one that changes.  But be that as it

20   may, their argument was, why did we consciously choose to

21   deviate from what the ISO had proposed, and I just quoted that

22   for the purpose of showing that we used exactly identical

23   language which the ISO not only proposed, but explained it,

24   using the word 'or' as meaning the same thing.

25        Second thing.  Mr. Hammer pointed out that the policy

1    forms did change in later years, and that's true, but it

2    wasn't just that word that was changed, they restructured the

3    whole policy and put things in different places.  So I think

4    you're comparing apples to oranges on that.

5        The question of would a contractor like to have coverage

6    forever --

7            THE COURT:  I can't -- to consider that, means that

8    I've got to go outside of the contract, which I've got to find

9    that it's ambiguous.

10           MR. COOKE:  I agree with that.

11           THE COURT:  And if it were ambiguous, then we'd have

12   to go to the jury and let them decide the ambiguity.  Then if

13   one of you parties chose to, you could call the parties to the

14   contract and see what they intended.  But we aren't there.

15   We're here with summary judgment.  And we can't decide issues

16   of fact, and that's an issue of fact.

17           MR. COOKE:  Right.  That was really the point that

18   I --

19           THE COURT:  I dare say if we called the parties, they

20   would say -- they would probably side with you.  But we can't

21   call them, and we can't try to read into this record what they

22   would do.  That's irrelevant, I think, under the determination

23   we make.  Because if there is an ambiguity, then I have no

24   business deciding the motion for summary judgment.  And if

25   there is not an ambiguity, we can't go outside of the policy

1    and determine what the parties thought they were getting when

2    they entered into the contract.  We have to look at the four

3    corners of the contract itself.

4         MR. COOKE:  I agree with that.  And I would close

5    with almost exactly that point.  And that is, I think that

6    Mr. Hammer, and again, kudos to him for making the argument

7    this way, I think he's conflating the idea of asking the

8    contract to be read fairly, as in it's fair to the insurance

9    company; that's not what we're asking for.  We're asking that

10   the language be given its fair meaning.  And that the law is

11   very clear on that, that when you argue for two different

12   interpretations, and one leads to an absurd result and the

13   other leads to a fair and reasonable result, you take that

14   one.

15        THE COURT:  What you just said is a rule of

16   construction.  It's applied to contracts in South Carolina.

17   But I think Mr. Hammer was correct when he said that I misused

18   the word reasonable.  Because reasonable doesn't come within

19   the equation of looking at the language.  Plain, ordinary,

20   usual meaning comes there.  Now, maybe reasonableness comes

21   into the equation when you start looking at the entire

22   contract, and what's absurd and what's not absurd, but not the

23   language.  We don't give it the reasonable meaning.  The

24   parties give it the meaning and then we take the meaning as

25   they gave it to us.

1    So reasonable, fair, I'm not so sure fair is a proper word

2    to use, because some contracts are not fair, but the parties

3    enter into them intentionally, knowingly and clearly, and,

4    therefore, fair or not, they have to live by them.

5            MR. COOKE:  Right, but the Hansen versus USAA case

6    which defines ambiguity, does use the term fair and

7    reasonable, and that is that can the contract be fairly and

8    reasonably read more than one way, and that's the test of

9    ambiguity.  So that's probably where that term came from.

10            THE COURT:  Okay.

11            MR. COOKE:  Thank you.

12            THE COURT:  Anything else?  Now both of you can't be

13    last.

14            MR. HAMMER:  Your Honor, I was just going to tell you

15    that the --

16            THE COURT:  You know that.

17            MR. HAMMER:  -- the final version --

18            THE COURT:  I think I'll just get both of you to come

19    up here and just shout.

20            MR. HAMMER:  The final version is entry 733, which

21    is -- I think Mr. Cooke's entry -- and it's page three of 11,

22    and it looks like it's 1984 or '85 is the date on that.  So it

23    was before the contract in this case.  And this is the ISO

24    version.

25            MR. COOKE:  I misunderstood what you said then.  We

1    agree with that, but that's our point.

2    THE COURT:  In considering a motion based on Rule 59,

3    there are several recognized grounds upon which we can

4    reconsider a prior ruling.  If there's presented new evidence

5    that was not available at the original hearing, if there's an

6    intervening change of law, or to correct a legal error to

7    prevent a miscarriage of justice.  I don't think that the

8    plaintiffs assert the existence of the first two.  I think

9    they contend that we made a clear legal error, and that a

10    failure to reconsider it and reverse it will result in a

11    manifest injustice.

12    Their burden may be high, but if I decide that I made a

13    mistake, I think I have the authority to correct that mistake.

14    Because if I did make a mistake, obviously it may or will

15    result in manifest injustice.

16    If I used the word reasonable early improperly, obviously

17    that's not what I meant.  I know that the law is that

18    interpreting -- in interpreting a contract, we look to the

19    language and give it its usual, ordinary and plain meaning.

20    And that means the ordinary, usual and plain meaning that an

21    average person would give it.  And because of that, I have

22    some doubt as to whether or not, in a trial, I would let the

23    English professor's affidavit into evidence.

24    I took a lot of English in my time, and I never have been

25    acquainted with the rules of construction that she referred

1    to, and I doubt very seriously that the average juror has.

2    But be that as it may, we have considered that, it's in the

3    record, and we don't have to worry about a jury in this case.

4        I believe that the ruling that I made is a correct ruling.

5    I do not think that there are -- the policy is ambiguous, I do

6    not think that it is capable of two meanings in determining

7    when the occurrence must take place.

8        I think in dealing with bodily injury and property damage,

9    the contract is clear and unambiguous that they must take

10    place during the policy period, and not at any time.  I think

11    the 'at any time' refers to death, and to only death, and it

12    refers not to the occurrence taking place at any time.

13       Mr. Cooke says he's looked for cases and he hasn't found

14    any.  I think that's a compliment to the plaintiffs' lawyer.

15    And I compliment you for your diligence and for asserting a

16    point that I never heard of.  And I doubt that any other court

17    has ever heard of it, and that's why there are no cases out

18    there.  But though I applaud your ingenuity, I don't agree

19    with your argument.  I think that it's clear that any meaning

20    other than the one that I have said I think the policy

21    unambiguously conveys, would create an absurd result.  The

22    only sensible, fair, meaningful result that I think the

23    parties intended to accomplish in this case was the one that I

24    found in granting summary judgment initially.

25       Having reconsidered the matter, I think that my first

1    ruling was proper, and for the reasons stated therein and

2    those added today, the motion of the defendants for summary

3    judgment is hereby granted, and the Clerk of this Court is

4    directed to enter judgment in favor of the defendants and

5    against the plaintiff.  And it is so ordered.

6         Thank you very much.

7              MR. HAMMER:  Thank you, Your Honor.

8

9         (Court adjourned at 3:28 p.m.)

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

1                      REPORTER'S CERTIFICATION

2

3          I, Debra L. Potocki, RMR, RDR, CRR, Official Court

4   Reporter for the United States District Court for the District

5   of South Carolina, hereby certify that the foregoing is a true

6   and correct transcript of the stenographically recorded above

7   proceedings.

8

9

10

    S/Debra L. Potocki
11  _____

12  Debra L. Potocki, RMR, RDR, CRR

13

14

15

16

17

18

19

20

21

22

23

24

25